# Parker, *et al. v.* The State.

## *Manslaughter.*

(Decided June 13, 1912. Rehearing denied July 11, 1912.
59 South. 319.)

1. *Jury; Deliberation; Separation; Verdict.*—Where a jury in the trial of a charge of manslaughter, after the adjournment of the court for the day, delivered their verdict in writing to the sheriff, and were discharged by him, and on the folowing morning returned such verdict to the court without any further deliberation or consideration thereof, the verdict was a nullity.

2. *Same; Unauthorized Discharged; Effect.*—Where the jury returned a verdict in a criminal case, which was void, and were thereafter discharged, this unauthorized discharge before a legal verdict was rendered entitled the defendant to an acquittal.

APPEAL from Geneva Circuit Court.

Heard before Hon. H. A. PEARCE.

From a conviction of manslaughter Bascom Parker and another appeal. Reversed and rendered.

C. D. CARMICHAEL, ESPY & FARMER, and W. L. PARKS, for appellant. In legal contemplation the finding of a jury in felony cases is never a verdict until it is received in open court in the presence of the accused and the judge presiding.—*Hayes v. The State,* 107 Ala. 1; *Wells v. The State,* 147 Ala. 140. The discharge of the jury was unauthorized, and the defendants were entitled to an acquittal.—Authorities supra; *Ned v. The State,* 7 Port. 187; *Cook v. The State,* 60 Ala. 39; *Jones v. The State,* 97 Ala. 77; *Jackson v. The State,* 102 Ala. 76.

R. C. BRICKELL, Attorney General, and W. L. MARTIN, Assistant Attorney General, for the State.

PELHAM, J.—The trial of the case having reached that stage of the proceedings when the court had

[Parker, et al. v. The State.]

charged the jury, the jury retired to deliberate upon
their verdict under the care and custody of the sheriff
with instructions from the court to keep the jury to-
gether, and to send for him if an agreement was
reached. The defendants were on trial charged with
manslaughter, and the case was given to the jury under
charge of the court about 6 o'clock p. m. on April 9, 1912.
On the following day, April 10th, at about 9:30 a. m.,
the jury was brought into open court, and the foreman
of the jury under the direction of the court, who had
been informed that the jury had agreed upon a verdict,
handed to the clerk of the court a verdict written upon
a piece of paper. The defendants jointly and separately
objected to the verdict being received and read, and filed
a written motion to that effect. The hearing on the
motion developed the following facts: When the jury
retired to deliberate at 6 o'clock, they remained together
in deliberation until between 10:30 and 11 o'clock that
night, when they knocked at the door of the courtroom,
which was used as the jury room, and informed the
sheriff, who responded to the summons, that they had
agreed upon a verdict. The sheriff told the jury to wait
until he could see the judge. The sheriff then went to a
nearby hotel where the judge was stopping, and upon
making inquiry for him was informed that the judge
had retired for the night. The sheriff then returned to
the jury room, received the verdict, and discharged the
jury, with instructions to say nothing about the case
and return at the usual hour for convening the court
on the next day. At the time the verdict of the jury was
received by the sheriff and the jury allowed by him to
disperse, neither of the defendants was present or rep-
resented, the court was not in session, and no one, in
fact, was present at this late hour of the night, when
this extraordinary occurrence took place, but the sheriff

3 CA

and the jury. The next morning the jurors individually regathered from their various stopping places at the courthouse at the hour for reconvening the court, and were collected up by the sheriff and put together in a room at the jail, where they were kept until brought into open court at about 9:30 o'clock that morning. It was shown that the sheriff's action was without the knowledge or consent of the defendants, their attorneys, or the court. He seems to have acted entirely on his own initiative on a mistaken idea of his duties and authority, for there is nothing in the proceedings to show willful misconduct on the part of the sheriff, although it would seem that so important an officer would have a better understanding of the duties of his office. It was further made to appear on the hearing of the defendant's motion that, after the jury handed the indictment, verdict, and other papers in the case to the sheriff and separated, they did not subsequently, when put together in the room at the jail, or at any other time or place, consider or deliberate upon the case. The sheriff handed all of the papers, including the slip of paper upon which the verdict was written, to the foreman of the jury when the jury was put together in the room at the jail; but the papers were not opened or considered, or the case discussed or deliberated upon. The jury considered that they had rendered their verdict to the sheriff and after that time were not instructed to further consider or deliberate upon the case, nor did they do so. The verdict that was offered by the foreman of the jury to the court in open session in the presence of the defendants and counsel on the morning of April 10th was the verdict of the evening before, and under the evidence introduced on the hearings of the motion could have been nothing more. That verdict was not valid, and could have no effect as a legal ascertainment of the defend-

ants' guilt, as it had been delivered to the sheriff during a recess of the court when neither the presiding judge nor the defendants were present.   After the facts were made known to the court, it should have refused to receive the verdict that had been delivered to the sheriff, which was a nullity and of no force in law as a verdict, and ordered the jury to retire and consider the case and after deliberation to return into court a verdict.   Counsel for the defendants concede, in brief filed, that, had this course been pursued, it would not have been such an irregularity as to require the discharge of the defendants.   But the court having received this void verdict without its having been adopted after due consideration and deliberation by the jury acting as a body under their oaths at any time after its unauthorized and invalid rendition to the sheriff, the void verdict was not thereby vitalized or legalized.   It was void and of no force or effect as a legal finding of the jury, and could only be made in fact a legal verdict by its unanimous adoption by the jurors upon due consideration and after deliberation subsequent to its unauthorized delivery to the sheriff.   This was not done.

There is no distinguishable difference in principle between this case and the cases of *Harris v. State,* 153 Ala. 19, 49 South. 458, *Wells v. State,* 147 Ala. 140, 41 South. 630, and *Hayes v. State,* 107 Ala. 1, 18 South. 172.   The void verdict having been received and accepted or recorded against the objection and motion of the defendants, and the jury discharged by the court, the motion of the defendants to enter an order of discharge should have been granted, for the jury had been sworn and the trial entered upon and the jury had been discharged without authority or warrant of law without having rendered a legal verdict.—*Ned v. State,* 7 Port. 187; *Cook v. State,* 60 Ala. 39, 31 Am. Rep. 31; *Hayes v.*

*State, supra; Wells v. State, supra; Harris v. State, supra.*

The motion to discharge is shown to have been seasonably made by the defendants jointly and separately, and proof offered on the motion.   The judgment of the court is reversed, and a judgment will be here rendered discharging the defendants, Bascom Parker and John Parker, from further prosecution on the indictment preferred in this case.

Reversed and rendered.